E. SCHMITT, *Appellant*, v. NATIONAL SASH & DOOR COMPANY *et al., Respondents,* J. C. BARLINE, *Appellant.*[1]

*C. E. Ellis,* for appellant.

*Albert I. Kulzer* and *Hamblen & Gilbert,* for respondents.

FULLERTON, J.—In the early part of the year 1920, J. C. Barline and George M. Barline, brothers, were dealers in timber and timber products, having their place of business in the city of Spokane, in this state. The respondent National Sash & Door Company is a corporation organized under the laws of the state of Kansas, and is engaged in the manufacture of timber products, having its manufacturing plant at Independence, in the state of Kansas. The respondent C. A. Smith is the president of the corporation and its general manager.

[1]Reported in 287 Pac. 209.

In February of the year named, the Barline brothers discovered that the timber on certain lands, owned by the Cameron Lumber Company, was for sale. The price at which the timber was offered was attractive to the Barline brothers, and J. C. Barline wrote to Smith in an endeavor to induce his corporation to finance the purchase. In his letter he suggested a plan for handling the timber which he thought would be to their mutual advantage. In this letter he described the several tracts of land on which the timber was situated, stated the number of feet of timber on each tract, as shown by a cruise of the timber made by the owner, and stated the price at which the timber could be purchased. Smith replied to the letter by wire, saying that he could finance the proposition, but owing to the large sum to be advanced, his company would prefer to take the timber themselves and allow a reasonable commission to the Barline brothers for arranging the deal. He closed the telegram by saying that if "some such plan is feasible wire me fully at once."

J. C. Barline replied to the telegram, saying that the proposition to take a commission was not attractive to him, but that he would not stand in the way of an outright purchase, and in the latter case would require fifty cents per thousand of the timber purchased as a commission. Further correspondence was had between the parties which resulted in an offer by the Barline brothers to the respondents of three separate propositions, one of which gave the respondents the right to purchase the timber outright, and pay a commission to the Barline brothers for their services, another a joint working agreement under which the profits should be divided, and the third for an outright sale of the timber at a fixed price.

In the meantime, the Barline brothers had taken an option to purchase the timber for $47,000. To procure

the option, they paid to the owner of the timber the sum of $2,000; the sum to be forfeited to the owner if the option was not exercised, otherwise to be credited on the purchase price of the property.

The option to purchase was taken on February 20, 1920.   C. A. Smith came to Spokane from the place of business of the respondent corporation about March 1, 1920.   On his arrival, he selected the first of the plans above outlined.   The option was then turned over to him, and thereafter he dealt directly with the owners, purchasing from them not only the timber included within the option, but much additional timber standing on other lands.   Smith then repaid to the Barline brothers the amount they had advanced to procure the option, and, with reference to the commissions to be paid them, entered into the following agreement:

"THIS AGREEMENT, entered into this 9th day of March, 1920, by and between C. A. Smith, party of the first part, and J. C. Barline and G. M. Barline, parties of the second part;

"WHEREAS, party of the first part has made purchase this day from the Cameron Lumber Company of Spokane, Washington, all the standing timber located on certain tracts of land described as follows, to wit:

"All of Sec. 1, Twp. 31 North, Range 41 EWM;

"All of Sec. 5, Twp. 31 North, Range 41 EWM;

"SW¼ of Sec. 9, Twp. 31 North, Range 41 EWM;

"All of Sec. 11, Twp. 31 North, Range 41 EWM;

"North ½ of Sec. 12, Twp. 31 North, Range 41 EWM;

"All of Sec. 13, except the SW¼ of the SE¼, Twp. 31 North, Range 41 EWM;

"SW¼ of Sec. 14, Twp. 31 North, Range 41 EWM;

"N½ and SE¼ of Sec. 15, Twp. 31 North, Range 41 EWM.

"WHEREAS, the parties of the second part have acted as agent of the first party in such purchase, it is agreed that the party of the first part shall pay to the parties of the second part for such services, the sum of fifty

cents (50c) per thousand feet board measure for all lumber sawn or manufactured from timber located on land described herein; computation to be made on all such lumber manufactured during three months intervals after sawing operations have started. Such intervals beginning with Jan. 1st, April 1st, July 1st and October 1st of each year. Payment to be made to the second parties at the end of such intervals for all such lumber manufactured at the agreed rate of fifty cents (50c) per thousand feet board measure.

> "C. A. SMITH
> "J. C. BARLINE
> "G. M. BARLINE."

By the terms of the contract between the respondents and the Cameron Lumber Company, the respondents were granted a period of ten years within which to remove the timber from the land. Immediately following the purchase of the property, the respondents began to cut and remove the timber, and, between that time and some time in the year 1925, cut and removed so much of the timber as they desired to remove, and then quit and surrendered the real property on which the timber stood to its owner, reconveying also to the owner such of the timber purchased as had not then been removed. According to the estimate of a cruiser, there was left of timber unremoved 2,250,000 feet.

Commencing on September 12, 1923, and continuing thereafter at irregular intervals, the respondents made payments to the Barline brothers on the account of the commissions agreed to be paid them, the total aggregating $9,076.70.

Subsequent thereto, George M. Barline sold and assigned all his interest in the contract to the appellant, E. Schmitt, and Schmitt instituted the present action to recover a balance claimed to be due on the contract. J. C. Barline, the owner of the other interest, refused to join as a party plaintiff, and he was made a party

defendant. On the issues framed by the parties, the cause was tried by the court, resulting in a judgment in favor of the respondents, dismissing the appellant's action with prejudice.

The appellant founded his cause of action on the correspondence passing between the Barline brothers and the respondents which preceded the written agreement heretofore quoted in full, contending that these writings constituted a contract between them by which the respondents agreed to pay to the Barline brothers, as a consideration for a transfer of their interests, fifty cents per thousand feet on the quantity of timber on the land involved as shown by the original cruise thereof. This quantity was 23,413,000 feet. The respondents had paid on the basis of 17,870,717 feet only, and the recovery sought was fifty cents per thousand feet on the difference between these amounts. To the complaint, the respondents answered by denials and by an affirmative plea setting out the written agreement, averring that this agreement was the actual contract between the parties; further averring that they had performed the obligations of the contract in full. The reply of the appellant was a denial of performance, and a plea to the effect that the written agreement was without consideration, was lacking in mutuality, and was executed for the purpose of deferring payment of the amount then due for the accommodation of the respondents and not otherwise.

The appellant's learned counsel has made an extended argument in support of his client's contentions, but we do not think it necessary to follow the argument in detail. A careful reading of the correspondence convinces us that no contract was agreed upon between the Barline brothers and the respondents prior to the time the respondent Smith reached the city of Spokane in March, 1920. As we read the cor-

respondence, the respondents had carefully refrained from entering into a binding contract—that their purpose was to defer making a selection between the different plans proposed until their representative reached Spokane, and could view the situation at first hand. As before noted, Smith selected the method which involved the payment of a commission, and, for fixing the terms of the commission payment, entered into the written agreement. It is our opinion, therefore, and we conclude, that the agreement was entered into for the very purpose of fixing the amount and manner of payment of the commission, that it has behind it a valid consideration, that it has mutuality, and that the rights of the parties must be measured by it.

The agreement, it will be observed, does not contain a promise to pay a commission on any definite or fixed amount of timber. The promise is to pay fifty cents "per thousand feet board measure for all lumber sawn or manufactured from the timber located on the land described. . . ." at certain designated times. With this requirement the respondents have complied. True, they did not comply with the requirement literally. The payments were made irregularly, and not at the times specified in the agreement. And, owing to the fact that timber from other tracts was intermingled with the timber from the described tracts and sawed at the same time, the lumber could not be measured with accuracy after it was "sawn or manufactured," and resort was had to another method to keep an account of the quantity. But the record does not disclose that the method adopted was inaccurate, or that it resulted in a less payment to the Barline brothers than was their due.

As an alternate relief, the appellant claims that he is entitled at least to recover at the contract rate for the timber left uncut and turned back to the

original owner. But the contract does not expressly so provide, and from the language of the contract it is by no means clear that this was one of its implied terms. Nor does the evidence lend support to this construction. This was not the issue to which the evidence was directed, and there is but little evidence on the question. Such as there was, however, points to the fact that the respondents took from the land all of the timber which they found suitable for their purposes, and that they might not be required to pay a commission for more timber than they sawed and manufactured was the reason for leaving the terms of the contract indefinite in this respect.

Our conclusion is that the Barline brothers were fully paid in accordance with the terms of the contract, and that the judgment of the trial court should be affirmed. It is so ordered.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.